d1.    That defendant California Board of Corrections be ordered to comply with Penal Code §§6031.1 and 6031.1(c).

5.    That if a satisfactory plan cannot be submitted and implemented, the defendants be enjoined and restrained from incarcerating or detaining any and all prisoners in the Jail and further enjoined from transferring prisoners to an alternative facility unless defendants can provide evidence satisfactory to the Court that the alternative does not suffer from the conditions herein complained of and that it is accessible to visitors and counsel.

6.    That the Court retain jurisdiction over defendants until such time that the Court is satisfied that the practices, policies, acts and omissions alleged herein no longer exist and will not reoccur.

7.    That the Court award reasonable attorneys' fees, investigator fees, paralegal fees and costs of suit herein to plaintiffs.

8.    That the Court award other such relief as may be necessary and proper.

For the foregoing reasons, and for those reasons which will be argued by plaintiffs at time of hearing on this Motion, plaintiffs would urge the court to deny defendants' Motions to Dismiss, Motion to Strike and Motion to Compel Further Statement of Claim.

Dated: _____        Respectfully submitted, YOUR NAME AND ADDRESS HERE

---

UNITED STATES DISTRICT COURT    E-filing
_NORTHERN_    DISTRICT OF CALIFORNIA

CV 08    2862

_Edgar Lee Warren_,
              Plaintiffs,

vs.

_Butte County Jail,_
_Doctors and Medical Staff,_
              Defendants.

PLAINTIFFS' REPLY AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION TO COMPEL FURTHER STATEMENT OF CLAIM

MHP

(PR)

TO:   The defendants herein, and their attorney of record COME NOW THE PLAINTIFFS who submit the following Reply and Opposition to the Motion to Dismiss, Motion to Strike and Motion to Compel Further Statement of Claim filed herein by the defendants.

Dated: _____

Respectfully submitted,

_____
Attorney for Plaintiffs

_Edgar Lee Warren_
Date May-19-2008

j.    That visiting conditions be established which assure decency, comfort, privacy of conversation, conjugal rights, and visiting periods of adequate duration and frequency, and that prisoners' visitors not be required to wait intolerable lengths of time before visits occur.

k.    That no limitations be placed on persons an inmate may see, communicate with and receive communications from;

l.    That inmates be assured of reliable access to telephones to make outgoing calls and to receive incoming calls, and that such phones not be wiretapped or monitored in any manner.

m.    That a reasonable set of rules regarding intra-jail behavior and inmates rights be promulgated in English and Spanish and provided for each prisoner upon entry to the Jail and posted prominently throughout the Jail;

n.    That no discipline or re-classification of an inmate occur without first affording him notice, the right to confrontation of accusers, the right to cross-examine adverse witnesses, the right to present evidence and testimony, and a written decision containing reasons therefore and evidence relied upon, and hearing before an impartial tribunal;

o.    That prisoners be protected from unprovoked assaults by Jail officers;

p.    That plaintiffs be assured of adequate opportunity to bathe every day;

q.    That all prisoners, including the indigent, have reasonable opportunity to obtain life necessities and amenities;

r.    That prisoners have the opportunity to privately and confidentially communicate with their attorneys in a room provided by defendants for that purpose;

s.    That prisoners be allowed to retain in reasonable quantities their personal belongings, including but not limited to, correspondence and photographs, and not be subjected to unlawful searches and seizures thereof;

t.    That Jail living conditions be humanized and provided with reasonable furnishings and windows to the outside world;

u.    That prisoners be afforded an adequate, nutritious, and wholesome diet, including eggs, milk and fresh fruit and vegetables in compliance with California Administrative Code, Title 15;

v.    That mentally disturbed inmates be provided adequate psychiatric care, and not be housed with non-disturbed inmates;

w.    That the use of the "cold tank" as a means of control and discipline be forbidden;

x.    That blanket punishments of groups of prisoners for the wrongdoing of one be forbidden;

y.    That all prisoners eligible be afforded an opportunity to register to vote, be informed, and to vote, either directly or by absentee ballot;

z.    That all prisoners of all faiths be afforded an opportunity to practice their chosen faith, including be allowed access to religious literature, visits from religious leaders, church services and a diet conforming to church dogma;

a1.    That defendants be ordered to conform their classification plan and practice to the requirements of California law;

b1.    That defendants be ordered to bring all newly accused persons before a magistrate within two days within the meaning of Penal Code §825;

c1.    That defendant California Board of Corrections be ordered to use its powers pursuant to Penal Code §6029.1 to withhold funds from the County Jail Expenditure Fund to compel the County of _Butte Jail_ to develop and implement alternatives to incarceration.

from the federal court if it is preferred that their form be used. Each prisoner who is a plaintiff on the complaint must submit a separate affidavit showing that he or she is too poor to pay court costs.

## REQUEST FOR APPOINTMENT OF COUNSEL:

The in forma pauperis law, 28 USC, Sec. 1915(d), allows a U.S. District Judge to "request an attorney to represent any such person unable to employ counsel." On the basis of this law, district judges frequently have appointed lawyers for prisoners who filed section 1983 suit on their own behalf. In Almond v. Kent, 459 F. 2d 200, 204 (4th Cir. 1972), a U.S. Court of Appeals ordered a district judge to appoint counsel for a prisoner in a section 1983 suit after the district judge had refused to do so. In Hudson v. Hardy, 412 F. 2d 1091, 1095, (D.C. Cir 1968), another Court of Appeals said that it is the district court's "plain duty to appoint counsel" to help defend a motion for summary judgment "when necessary to insure that an indigent prisoner's allegations receive fair consideration." Most judges have ruled that section 1915(d) does not authorize the court to pay a lawyer for his work in a section 1983 suit. In Jordan v. Fitzharris, 257 F. Supp. 674 (N.D. Cal. 1966), however, the court not only appointed a lawyer for a prisoner, but also included the lawyer's "necessary expenses " of handling the case as part of the "costs" of the suit which had to be paid by the party that lost the suit; in that case, the Warden of Soledad Prison in California. In Newman v. Alabama, 349 F. Supp 278, 286 (M. D. Ala. 1972), the court ordered the defendants, prison officials, to pay $2,483 for expenses (including a deposition and photocopying) and $12,000 attorney's fees. 42 USC, Sec. 1988 is a provision which will allow an attorney to collect fees. Because there are instances of decisions in which large sums of fees were granted to attorneys who represented prisoners, if possible, it may be to the advantage of the prisoner to obtain the help of an attorney. This is not easy with for various reasons. If the suit has substantial merit, though, an attorney may be willing to take the suit if he or she feels it is winnable.

## WHERE TO FILE:

California prisoners will file in one of the following courts:

Eastern District of CA: 650 Capital Mall, Sacramento, CA. 95814. (When incarcerated/filing from Fresno, file at 1130, O St. Room 4203, Fresno, CA 93721). This district includes the counties of Alpine, Amador, Butte, Calaveras, Colusa, El Dorado, Fresno, Glenn, Inyo, Kern, Kings, Lassen, Madera, Mariposa, Merced, Modoc, Mono, Nevada, Placer, Plumas, Sacramento, San Joaquin, Shasta, Sierra, Siskiyou, Solano, Stanislaus, Tehama, Trinity, Tulare, Tuolumne, Yolo and Yuba.

Northern District of CA: 450 Golden Gate Ave., San Francisco, CA 94102. This district includes the counties of Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma U.S. Courthouse, 450 Golden Gate Ave., San Francisco, CA. and (3) Central District of Calif.: U.S. Courthouse, Los Angeles, CA, 90012.

Central District of CA: 312 N. Spring St., Los Angeles, CA. 90012-4793. This district includes the counties of Los Angeles, Orange, Riverside, San Bernardino, San Luis Obispo, Santa Barbara and Ventura.

Southern District of CA: 940 Front St., San Diego, CA 92189. This district includes Imperial and San Diego Counties.

Prisoners from states other than California will be able to obtain the address of the U.S. Court in which he or she must file, from the U.S. Congress, Washington, D.C. A quick check in the library may produce the necessary address. The District Court, upon request, will provide all the information regarding Local Rules, filing, service of complaint, the number of copies required by the court, etc. may differ from that of California.

## PLAINTIFF'S RIGHT TO FILE AND COMMUNICATE WITH COURTS, LAWYERS AND MEDIA:

Prison staff are prohibited from confiscating, reading, censoring, or in any way delaying a prisoner's legal papers, or otherwise interfering with any communication between the prisoner and a court. No communication needs the approval of a prison representative. Many court decisions have been handed down on this subject, but some of the older ones include:

Ex Parte Hull, 312 U.S. 546, 549 (1941)

Sinaus v. Brown, 416 F.2d 105, 107 (7th Cir. 1969)

Smartt v. Avery, 370 F.2d 788, 790 (6th Cir. 1967)

DeWitt v. Pail, 366 F.2d 682, 685 (9th Cir. 1966)

McCloskey v. Maryland, 356 F.2d 72, 74 (4th Cir. 1964)

Section 2600 of the California Penal Code entitles a prisoner to correspond confidentially with the courts, lawyers and public officials. The California Supreme Court has held that this law prohibits prison officials from reading, censoring or otherwise



OVER

Page 4

constitutional rights violated by the defendants. Any one or more of these may be required in order to avoid the suit being dismissed by the court.

Procedure for an amended complaint is governed by the Federal Rules of Civil Procedure. While there is a right to amend once before the defendants submit an answer in response to the complaint, the court's permission (or the consent of the defendants) is required in order to submit a second amended complaint or to submit any amendment after the prison officials have filed an answer. The court should grant permission "freely... when justice so requires." If the complaint includes a detailed statement of the facts of the case, the plaintiff may want the court to consider that statement as evidence when it decides whether to issue a temporary restraining order or a summary judgment. The complaint can count as sworn evidence for these purpose only if you have it "verified." That is, the plaintiff makes a sworn statement, at the end of the complaint, that everything in the complaint is true to the best of his/her knowledge. Making a sworn statement is given the same weight as if one were to testify in court. Similarly, one who lies, can be prosecuted for perjury.

### AFFIDAVITS:

If there are several plaintiffs named in the suit, it is often helpful for each to submit separate sworn statements of the details of the facts which that plaintiff according to what he/she knows. A sworn statement is called an "affidavit." It is also helpful to submit affidavits from other people who were witnesses to events that described in the complaint or who know facts that need to be proved. These affidavits are extremely important if the prison/jail officials move for a summary judgment against the plaintiffs.

Affidavits from other people can be submitted with the complaint, also. Each affidavit is an "exhibit" in support of the complaint and each exhibit has its own letter--"Exhibit A," "Exhibit B," etc. Letters from prison officials, copies of rules, and any other letters from prison officials or relevant documents can be submitted as lettered exhibits. These exhibits can be referred to as support for stated facts in the complaint.

Affidavits can be submitted later in the suit whenever they come into the possession of the plaintiff. It is wise to have each affidavit notarized, to verify the signature by a Notary Public. Several staff members at each prison are notaries. The prison/jail is supposed to make a notary's service available to prisoners. In the event that it is impossible to obtain a notary, have another prisoner witness signatures. Then write a statement at the bottom of the affidavit which explain the various means tried by the plaintiffs to obtain the services of a notary.

### MEMO OF LAW:

The complaint is not to include legal arguments, nor should it refer to earlier court decisions or interpret them to show why the court should rule in favor of the plaintiff. Legal arguments can be made in a separate document called a" Memorandum of Law," a "Memorandum of Points and Authorities," or a "Brief." Although a memo or brief is helpful, it is unnecessary unless immediate help is requested. If submitted, it needs to be kept short and to the point. Discuss only the two or three most important earlier decisions that support the plaintiff's position. The judge, if he or she so desires, can access a complete law library with the help of law clerks.

### IN FORMA PAUPERIS PAPERS:

Federal courts charge a fee for filing a lawsuit. The U.S. Marshall's office also charges if he personally delivers legal papers to defendants. Personal delivery of legal papers, called "service of process,"is required under most circumstances. The plaintiff must ask the federal clerk about service of the suit at the time they are contacted, either by phone or through correspondence. If the suit is won, the court will order the defendants to reimburse the plaintiff for these expenses. Regardless, the fees must be pre-paid at the time the suit is filed or post security for the costs, in the event the plaintiff loses the suit.

If the plaintiff is without funds, he/she will want to request the court to allow the plaintiff to sue "in forma pauperis", in recognition that there is a lack of funds to pay for the filing of the suit. One is able to sue "in forma pauperis" whether he or she is representing self ("in pro per") or has a lawyer (in "per se"). Although the judge does not have to allow one to sue in forma pauperis, he/she usually will if the suit appears to have validity. It is not necessary for the plaintiff to be totally without funds. He or she simply needs to show that the costs cannot be paid without being deprived of the "necessities of life." (Adkins v. E.I. Dupont do Nemours, 335 U.S. 331; 339 (1948).) If the court rules that the plaintiff is not poor or the suit is "frivolous," the legal papers will be returned. To continue, the plaintiff will need to find a way to pay for filing and service. The legal basis for suing in forma pauperis is section 1915 of Title 28 USC. A forma pauperis form is included or the plaintiff can request one

interfering with any mail between prisoners and attorneys. (In Jordan, 7 Cal. 3d 930 (1972).   *Page 5*

### PRISONERS' RIGHT TO HELP EACH OTHER:

In Johnson v. Avery, 393 U.S. 483(1969), the U.S. Supreme Court held that it is unconstitutional for a prison to have any rule against jailhouse lawyers and "writ-writers." The California Supreme Court has ruled that prison officials cannot prohibit a prisoner from having in his or her possession legal papers relating to another prisoner's case. (In re Hall, 2 Cal. 3d 675 (1970).) The court recognized that such a rule would make it impossible in practice for prisoners to help one another with legal work.

### ACCESS TO LAWBOOKS:

In 1970 a U.S. District Court in California ruled that adequate prison law libraries are essential if prisoners are to have access to the courts. The decision, Gilmore v. Lynch, 319 F. Supp. 105 (N.D.Cal. 1970), also ordered California officials to stop destroying lawbooks or removing them from libraries. In 1971 the U.S. Supreme Court upheld this ruling and asked the district court to issue an order stating which law books the prison must have. (Younger v. Gilmore, 404 U.S. 15 (1971).) We know from our correspondence with prisoners nationwide that there are many jails and some prisons that still do not have a law library, or the law library that exists, is inadequate. To cause a prison or jail to provide an adequate law library would be a most significant success on the part of a plaintiff as it's establishment would serve other prisoners for years to come.

### GETTING IMMEDIATE HELP FROM THE COURT:

Ordinarily, months pass before the court reaches any decision regarding a lawsuit. But it may be necessary for the court to intervene to protect the prisoner's rights prior to the final decision. The judge can issue a Temporary Restraining Order (TRO), followed by a Preliminary Injunction. The following situations may require a TRO and a Preliminary Injunction:

(a)   Prison staff is taking actions, or threatening actions that make it difficult for the prisoner to continue the lawsuit. For years the courts have issued TRO's to protect prisoners rights.(Brennemen v. Madigan, 343 F. Supp. 128 (N.D. Cal. 1972.)

(b)   Prison officials are taking actions,or threatening actions that could make a favorable court decision meaningless by the time it was decided. In one case, California officials were about to destroy law books taken from prison libraries. One of the objectives of the suit was to insure that the books be kept in libraries. The court issued a TRO to stop officials from destroying the books until the court decided if they had a right to do so. (Gilmore v. Lynch, 319 F. Supp. 105 (N.D. Cal. 1970; aff's sub norm Young v. Gilmore, 404 U.S. 15 (1971).)

(c)   The plaintiff is in danger of serious bodily harm while the suit is being considered. A good example of this type of situation is Inmates of Attica v. Rockefeller, 453 F.2d 12, 24(2nd Cir. 1971).

In that case a U.S. Court of Appeals ruled that the district judge should have issued a Preliminary Injunction to stop "further abuse, torture, beatings and similar conduct." The court stressed that there had been a pattern of brutal conduct continuing over several days, and it seemed likely that some prisoners might be seriously injured while the court was considering their lawsuit.

Just because one of these situations seems to be present, does not mean that a TRO is automatically or a Preliminary Injunction is forthcoming. These situations only show that the prisoner/plaintiff will be "irreparably harmed" if temporary relief is not granted. In addition, it needs to be shown that there is a reasonable chance of winning the suit, and that the harm to the plaintiff(s), if temporary relief is not granted, will be greater than the harm that might result from the prison officials temporarily stopping their actions. The harm that might result includes harm to other prisoners and to the society in general, as well as harm to the prison officials. Asking for a TRO shows the urgency of the situation, however, such relief is rarely granted. Many important permanent injunctions have been won after the judge first denied temporary relief.

## REGARDING the FILING OF CIVIL RIGHTS ACTIONS

1.   Important Note:

THE COURT WILL NOT RESPOND TO ANY LETTER WHICH ASKS FOR INFORMATION THAT IS CONTAINED IN THIS PACKET. Any other letter which provides information about your case or asks a question not covered in this packet, must be addressed to the Clerk of the Court, not to a judge. Communication between an

OVER

*Page-6-*

individual party and the district judge is strictly prohibited. See Local Rule 134 (a).

Although the court will liberally construe documents filed by litigants who are not represented by counsel, all parties are required to comply with the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of California. Applicable law may subject plaintiffs proceeding in forma pauperis to certain costs of litigation, such as witness fees and discovery expenses. Plaintiffs judicial process will be subject to court orders curtailing future litigation.

2.  **Consent to Proceed Before Magistrate**

The court has ordered the United States Marshal to serve the complaint in your case on the defendants. Enclosed with a copy of the court's order, is a form for consent to proceed before a U. S. Magistrate. A copy of this form has also been provided to the defendants.

Currently, a Magistrate is authorized by law and by this court (1) to issue final orders in non-dispositive matters, and (2) to issue findings and recommendations for consideration by a district judge, in dispositive matters such as motions to dismiss, for summary judgment, and for injunctive relief. See Local Rule 302; General order 262. This process will continue even if the parties do not consent to proceed before a magistrate. The consent by the parties to proceed before a magistrate allows the magistrate to issue final orders in dispositive matters and to conduct a trial in your case.

3.  **After an Answer is Filed**

(a) Whether defendants file an answer or a motion in response to your complaint, they are required to send you a copy. The Federal Rules of Civil Procedure (Fed. R. Civ. P.) do not generally allow the filing of a response or a reply to defendants' answer. The complaint and answer set up all the legal issues to be decided in the case. The court assumes that you dispute all of the defendants' legal defenses and their denial of the facts that you allege. The

(b) Once the answer is filed, it is your responsibility to move the case to a conclusion. You may do that through a process known as discovery (this is discussed in more detail below). If you fail to move the case forward, the case may be dismissed for lack of prosecution.

4.  **Filing and Serving Documents**

Any document which you submit to the court for consideration must be "served" on defendants. Documents usually served by placing a copy in the U. S. Mail. If an attorney has filed a document with the court on behalf of any defendant, then you must serve that attorney and not the defendant himself. You must include with each paper that you send to the court, a certificate which states the date that an accurate copy of that paper was mailed to defendants or their attorney. See Fed. R. Civ. P. 5. Any document which is received by the clerk which fails to include a certificate of service, may be returned to you and disregarded by the court.     The Clerk of the Court cannot serve any document for you.

5.  **Copies of Filed Documents**

The Clerk of the Court does not provide copies of documents to litigants, except at a charge of fifty cents ($0.50) per page. This charge applies to litigants proceeding in forma pauperis. If you want to receive verification of the filing of any documents you send to the court, you must provide an extra copy of the first page of that document, and request that the clerk of the court return it with an endorsement of filing. If you want to have a complete copy of any document you send to the court, you must supply that copy for endorsement and return by the clerk, along with a request that the copy be returned to you.

6.  **Motions**

(a) Any request that this court issue an order, must be made by a formal motion. Motions must comply with the Local Rules of this Court. Rule 230(m) of the Local Rules of the District in which you are filing provides that motions in civil rights cases filed by inmates are decided on the record (the file in the case), without a hearing. This rule applies only to cases where one party is currently incarcerated and is proceeding without a lawyer. In all other cases, motions must be noticed on the motion calendar pursuant to Local Rule 230(b).

If defendants file a motion in the case, you will have an opportunity to respond to it. The Clerk of the Court will send you a schedule stating when your response will be due. If you do not file an opposition to the motion, the motion may be granted.

## SECTION 1983 AND THE STRUGGLE FOR PRISONER'S RIGHTS

Although Section 1983 of Title 42 USC was enacted by the U.S. Congress over 100 years ago, it had very little effect until the 1960's. Section 1983 was originally known as the Federal Civil Rights Act of 1871. It was supposed to enable black people to have the new constitutional rights which they won after the Civil War enforced. The 13th, 14th, and 15th Amendments to the U.S. Constitution prohibits slavery, establishes the right to due process of law, and guarantees every male citizen the right to vote.

Some judges in the state courts refused to enforce these rights, especially when the rights were violated by other officials of state and local government. The U.S. Congress passed Section 1983 which permitted persons to sue in federal court whenever state or local officials failed to uphold the law. Yet, Federal judges continued to ignore this law, along with other civil rights bills that had been passed by Congress.

Although the purpose of Section 1983 was to bypass the state courts, federal judges usually ruled that lawsuits had to go back to those very state courts. Their rulings remained law until the civil rights movement. The key decision to eliminate the restrictions on Section 1983 came in 1961, in the case of Monroe v. Pape, 365 U.S. 167 (1961).

In 1964 the U.S. Supreme Court confirmed that a prisoner can use Section 1983 to sue state prison officials in federal court. Cooper v. Pate, 378 U.S. 546 (1964). Prisoners began to file more and more federal suits against prison abuses. A few cases were decided favorably on behalf of the petitioners, dealing mainly with freedom of religion, crude brutality and the prisoner's rights to take legal action without interference from prison staff. A significant contribution toward the education of prisoners regarding 42 USC, Sec. 1983 occurred in 1972 by way of the Jailhouse Lawyer's Manual, a publication of the Prison Law Collective in San Francisco on which this manual is based.

In 1991, the U. S. Supreme Court ruled that deliberate indifference must be shown to exist on the part of the Department of Corrections in order for the Court to rule in favor of the plaintiff(s). The current Court reflecting a more conservative group of judges, is handing down more and more decisions that diminish rights previously granted by a more liberal court.

### WHO CAN USE SECTION 1983?

Although Section 1983 was designed especially to help black people enforce the rights won after the civil war, anyone can use it, regardless of race. The person need not be a citizen. Civil death laws, which take away or limit a prisoner's right to use state courts for personal suits, do not affect the right to sue in the federal courts on the basis of 42 USC, Section 1983.

### WHAT IS COVERED?

The action(s) mentioned in the suit must constitute a violation of federal rights regarding conditions or treatment in jail, prison, or at the hands of law enforcement, and they must have been using their power from the state or local government. Someone acting under "color of authority" (anyone whose salary is paid with tax money) must violate federally protected constitutional rights.

### RELIEF THAT CAN BE REQUESTED?

Monetary damages can be requested. A declaratory judgement can be requested in that the court issue a finding that the rights of the prisoner were violated, and/or injunctive relief, in which the court orders the offending prison officials to desist in that which is the subject of the complaint.

### REQUIRED LEGAL PAPERS

The basic papers for starting any federal suit are a summons and complaint. An affidavit presenting legal arguments can also be submitted.

### SUMMONS AND COMPLAINT:

To begin, a copy of the complaint, usually the most significant document in the suit, is mailed to the U. W. District Court. It is important to complete the complaint to the satisfaction of the court, stating the name of the one bring suit, (plaintiff(s)), those against whom the suit is being brought (defendants), what occurred, what the plaintiffs want the court to do (relief). In addition, those laws that give the court the power to rule on the particular suit (the court's "jurisdiction") are to be stated. If the complaint does not meet all the requirements the suit may be dismissed at the start. The plaintiff has the right, though, to amend the complaint at least once before an answer is submitted by the defendants. To amend the complaint, after it has been submitted, follow the same form a the original complaint, indicating that it is an "Amended Complaint." The amended complaint can not deviate from the original in regard to what has occurred. An amended complaint may name additional defendants, request somewhat different relief, add or drop a plaintiff, or change the statement which lists the


OVER

## INTRODUCTION

The law comes from four sources: constitutions, statutes, case law, and administrative regulations.

A constitution is a document containing the fundamental laws and principles of a government or society.

Statutes (also called codes) are created by elected state representatives in the legislative branches of government which are primarily responsible for writing new laws and amending old laws. Case law is created by the courts as it applies and interprets the constitution, statutes, and previously decided cases in an attempt to resolve conflicts.

The laws adopted by state agencies, such as the California Department of Corrections and the Board of Prison Terms, for example, are called regulations. All such regulations are subject to the approval or disapproval by the Office of Administrative Law and must meet the legal requirements which are set forth in the Administrative Procedure Act (APA) which is part of the Government Code statutes.

It is extremely important for the reader of this manual to understand that laws change as cases are overruled by a higher court; disapproved or criticized in another case; followed or explained more by later cases, and so forth. Propositions placed on voting ballots can change the interpretation of the law. Though Inside/Out Press is involved in the ongoing process of revising and updating its manuals, due to the limited resources of personnel and funds, it is not humanly possible to keep up with all the changes in the law. Therefore, any statutes and case law referred to in Inside/Out Press manuals should be checked out prior to filing any appeal, motion or petition based on same if one is to present the best case possible.

This checking out is referred to as, "Shepardizing," a term derived from a man named Frank Shepard who began, in 1973, to print citations to Illinois Cases. His idea turned into an indispensable tool for legal research, and thus his name became an integral part of the language of law.

Shepard's Citations is the name of the source books that report the current status and history of every published case, including each time and place it has been cited by other cases and legal publications. Through Shepard's the development and treatment can be traced and updated, as well.

If at all possible, one should not cite a case until it has been Shepardized. This will prevent a defendant from relying upon a legal argument that had been overruled, in the past, by the California Supreme Court. Or eliminate the possibility of having discovered, after the court denied one's moving papers, that a case on point and directly in his or her favor had cited the authority relied upon, and had been on the books for months.

Shepard's Citations are not limited to case law. Statutes, jury instructions, the constitution, and much more, can be Shepardized.

Inside/Out Press' 26 page manual, Legal Research, #101 in the catalog, contains complete instructions and related information concerning the skill of updating the legal authority discovered and how to keep up with new laws that are created each day. In short, Shepardizing. As the title indicates, this resource covers every aspect of legal research. It is essential for anyone who has no experience in the use of law books, but it will offer much to the more experienced researcher, as well.

plaintiffs' Third Claim for Relief;

    d.    Denial of access to counsel and the Courts in contravention of 42 U.S.C. §1983 and the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution as enumerated in plaintiffs' Fourth Claim for Relief;

    e.    Denial of Rights of Expression, Communication and Association in contravention of 42 U.S.C. §1983 and the First, Fourth and Fourteenth Amendments to the United States Constitution as enumerated in plaintiffs' Fifth Claim to Relief;

    f.    Denial of due process in disciplinary and classification proceedings in contravention of 42 U.S.C. §1983 and the Fifth and Fourteenth Amendments to the United States Constitution as enumerated in plaintiffs' Sixth Claim for Relief;

    g.    Cruel and unusual punishment in contravention of 42 U.S.C. §1983 and the Eighth and Fourteenth Amendments to the United States Constitution as enumerated in plaintiffs' Seventh Claim for Relief;

    h.    Denials of adequate medical care in contravention of 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution as enumerated in plaintiffs' Eighth Claim for Relief;

    i.    Violations of California Penal Code §§825, 4001, 4003, 4012, 4015, 4016.5, 4019.5(e), 4023, 4027, 6029.1, 6031.1, 6031.1(c), Business and Professional Code §§2141, 2392 and 2726, Health and Safety Code §11222 as enumerated in plaintiffs' Ninth Claim for Relief;

    4.    That the Court issue preliminary and permanent injunctions assuring that pretrial prisoners are accorded all of the rights and privileges of the innocent; and that all prisoners not be subjected to cruel and unusual punishment and not denied their other constitutional and statutory rights. More specifically, the plaintiffs should be assured by the plan, inter alia:

    a.    That the prisoners be accorded essential preventive medical care and receive adequate and sound medical, psychiatric and dental health care;

    b.    That prisoners addicted to controlled substances be accorded with reasonable medical care to ease the symptoms of withdrawal and not be housed with other non-addicted inmates during their period of withdrawal.

    c.    That a regular recreational and exercise program, outside of the cells, be expanded and scheduled and that all prisoners be allowed outdoors for sufficient periods to insure their continuous physical and mental well being;

    d.    That the Jail and its prisoners living areas therein be kept in a safe and healthy condition, with proper heating, ventilation and provisions for sanitation;

    e.    That pretrial prisoners be accorded private and adequate living space in one man cells with reasonable lighting and furnishings;

    f.    That defendants be enjoined from placing pretrial and sentenced prisoners in overcrowded cells and from requiring some pretrial and sentenced prisoners to sleep on the floor.

    g.    That education and vocational work programs be established;

    h.    That the prisoners have continuous opportunity to talk and associate with each other, for legitimate purposes including but not limited to socializing;

    i.    That the prisoners be entitled to receive through the United States mail or from visitors and retain books, magazines, newspapers, law books and legal materials and be provided with direct access to an adequate reading and law library with supplies and equipment for prisoners' legal work.

OVER

Penal Code §6031.1(c) to accurately report to the California Legislature on conditions in the *Butte* County Jail specifying those areas in which the Jail has failed to comply with the requirements of law.

## DECLARATORY JUDGEMENT

86.    An actual and substantial controversy exists between plaintiffs and defendants, in that plaintiffs complain that defendants are violating and will continue to violate their most fundamental rights under the United States Constitution and the laws and statutes of the United States and California and commit acts and omissions threatening plaintiffs' lives and health. Defendants have persisted in subjecting plaintiffs to unconstitutional and harmful conditions despite protests by the Jail's prisoners. Defendants may in the future make minor changes in the Jail from time to time in response to protests but they will do nothing substantial to remedy the unconstitutional and harmful conditions to which they subject plaintiffs or to change the policies and procedures. Defendants deny that their actions are illegal or unconstitutional or cause injuries to plaintiffs.

## INJUNCTIVE RELIEF

87.    All of the conditions and practices separately and in the aggregate make incarceration in the Jail severe, punitive and restrictive. The plaintiffs are now suffering and will continue to suffer irreparable injury as a direct and proximate result of the conditions and practices herein alleged and are without a plain, speedy, adequate remedy at law in that:

(a)    Money damages will not adequately compensate plaintiffs for denial of their Civil Rights or for time confined in the Jail pursuant to pretrial detention under conditions that could be successfully challenged in the Courts.

(b)    Plaintiffs are psychologically and physically harmed and damaged; and unconvicted prisoners are induced to plead guilty to criminal charges pending against them in order to avoid the conditions and practices herein described which exist at the Jail.

(c)    Money damages for plaintiffs' injuries are extremely difficult to calculate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

1.    That the Court certify this action as a class action.

2.    That the Court personally view the *Butte* County Central Jail to gain assistance in rendering a ruling.

3.    That the Court enter a judgement declaring that defendants, and each of them, through the individual and collective acts, practices, and omissions complained of herein, have subjected and are subjecting plaintiffs to:

a.    Summary punishment without due process of law in contravention of 42 U.S.C. §1983 and the Fifth and Fourteenth Amendments to the United States Constitution as enumerated in plaintiffs' First Claim for Relief;

b.    Denial of equal protection of law in contravention of 42 U.S.C. §1983 ant the Fourteenth Amendment to the United States Constitution as enumerated in plaintiffs' Second Claim for Relief.

c.    Prejudice to fair trial in contravention of 42 U.S.C. §1983 and the Fifth, Sixth, Seventh and Fourteenth Amendments to the United States Constitution as enumerated in

1  Edgar Lee Warren can Read Are Write But Copy
2  some Letter Are Documents Are complaints
3  some time however Edgar Lee Warren is With
4  The Regional center IN BakersFeild oF
5  caliFoRNia FOR The mentally Retarded and
6  mental PRoLems Is FoR Warren they have
7  his File there and FOR Warren sevice
8  coordinator Worker Phone number(661)327-8531#
9  BakersFeild, caliFornia. however Northern
10 Regional center IN chico, caliFoRNia. Phone
11 number(530)895-8633# Warren is doing what
12 He can To have The BakersFeild oF ca.
13 Regional center To Fax Warren File To
14 The Regional center in chico, ca. all So FoR To
15 help With This Lawsuit and This case.
16 Edgar Lee Warren, I.D. number-124/382#
17 Edgar Lee Warren Social securty card
18 number-559-047038# Attorney FoR
19 Edgar Lee Warren ssi hearing With The
20 Judge oN January 1-2008# 8.35 Wilshire
21 BLLce suite 618# Los Angeles, ca
22 Phone number _____ # 90017-2603
23 (1800)435-3457 # Ext 721#)
24 mr. Edgar Lee Warren Attorney IN L.A.
25 mr. ERderick A. mcneill have that same
26 File Regional center FOR The mentally
27 Retarded and mental PRobLems FoR
28 Edgar Lee Warren however mr. mcneill

have A Lawsuit in on Ther Los Angeles
county Jail medical For Edgar Lee Warren
get staFF INFFection there in The Los
Angeles county Jail But mr. Warren Dont
Know What court that his AttorNey mr.
mcNeill got his Lawsuit in however Warren
need The Federal court help of have A
AttorNen For PlaitiFFs, Edgar Lee Warren
For This Lawsuit Edgar Lee Warren Is have
This Lawsuit Put in on Butte county Jail Top
medical staFF Doctor's because warren got
staFF INFFection FROM Butte county Jail
and Then Butte county Jail medical will not
give Warren The Right Poisons For The
staFF INFFection however Warren been
asking Butte county Jail medical Doctor's
For The Neutrogena soap For Ther
staFF INFFection and Warren was only
give -2- Neutrogena soap all Ther timer
Warren been in Butte county Jail and
Warren been in Butte county Jail -9-
month -and July-23-2007# is When
Warren was Put in Butte county Jail
however Warren have been denied
medical assistance on This issues
so there For The issues will be Put be
For The united states District Judge
in The NortHERN District oF caliForNia
mr. Warren is asking Thy Federal court To Put
mr. Respectfully submitted AttorNey on This
Lawsuit and case.

1  BakersFeild of california Regional center service
2  coordinator worker there Phone number(661)327-8531#
3  To Fax Edgar Lee warren File To chico,california
4  Regional center Phone number(530)895-8633#
5  however ask The chico,ca.Regional center To
6  come To Butte county courthouse one court
7  street OROVILLE, ca 95965-3303# with Edgar
8  Lee warren File To This Judge Hermanen To
9  see what they can do about get warren out
10  of Jail tell The chico,california Regional center
11  To come, and see Edgar Lee warren at Butte
12  county Jail as soon as they can OK.(530)
13  532-7002#Butte county courthouse Phone
14  number#
15  signature: Edgar Lee warren
16  FOR BakersFeild of california Regional center
17  To Fax Edgar Lee warren File To The chico,
18  california Regional center FOR they can help
19  The Attorney on Ther Lawsuit To and mr.warren.
20  mr.warren is asking The Federal court to
21  APPOINtment COUNSEL mr. Respectfully
22  submitted Attorney on This Lawsuit mr. warren
23  might be send to NAPA State Hospital by The
24  court so there FOR warren want The Federal
25  to know what going on and FOR The know where
26  mr.warren is at and so on and so on.
27  Butte county Jail sergeants and offices and Doctors
28  medical staff been work Togother Against Edgar Lee warren.

*EXHibits*

**KENT R. CARUSO, Ph.D.**
**Clinical-Forensic Psychologist**
**License No. PSY 4477**

P. O. Box 994445
Redding, CA 96099-4445
(530) 241-2088

February 4, 2008

F _____ Butte County _____ F
I          Superior Court          I
L                                        L
E          FEB 08 2008          E
D          Sharol Strickland Clerk          D
By **E. DEN AREND** Deputy

The Honorable Gerald Hermansen
Butte County Superior Court
Butte County Courthouse
One County Center Drive
Oroville, California 95965

In the matter of The People vs. Edgar Lee Warren, defendant
Court Case #: CM027429
A CPC Section 1368/1370 et seq Psychological Evaluation

Dear Judge Hermansen:

Pursuant to an appointment by the court I recently completed a psychological examination on Mr. Edgar Lee Warren for the purpose of addressing issues relating to this man's current levels of intellectual/mental, social, and general psychological functioning, particularly as knowledge of and database in these things may assist me in determining whether or not Mr. Warren is competent to stand trial. The CPC Section 1368/1370 et seq Competency Test is two pronged and involves the questions of whether or not Mr. Warren is aware of and understands the nature and consequences of the proceedings currently pending against him; and whether or not he is capable of assisting his attorney in a rational manner during the conduct of Mr. Warren's defense.

This assessment of Mr. Warren was conducted in one of the Interview Rooms on the C Unit of the Butte County Jail on the morning and into the afternoon of February 4, 2008. Prior to my meeting with Mr. Warren I thoroughly reviewed the packet of information that had been forwarded to me by the Criminal Clerk's Office of the Butte County Superior Court. I spent almost 1 hour and 45 minutes with this man, and during that time conducted structured clinical interview and administered to him an abbreviated form of the Verbal part of the Wechsler Adult Intelligence Scale – Revised, the Bender Visual-Motor Gestalt Test, the Wechsler Memory Scale, and part of the Projective Story Telling Cards.

C: DA Rodriguez
J. Rodriguez

The Honorable Gerald Hermansen
Butte County Superior Court
In the matter of The People vs. Edgar Lee Warren, defendant
A CPC Section 1368/1370 et seq Psychological Evaluation
Page: -2-



Mr. Warren was made available to see me very shortly after my arrival on the C Unit. He was dressed in typical Jail attire, free from any restraints, and presented with adequate grooming and hygiene. Mr. Warren seemed to be in good physical health and there were no observable outstanding physical characteristics. Mr. Warren is a 51 year old mixed racial, Afro-American and Native American male of approximately average height and weight and appearing to be his stated age.

Mr. Warren indicated to me that he had no memory of seeing any other mental health professional recently and/or pertaining to his commitment offenses. He had no idea, he stated, what a 1368/1370 Evaluation is about; but later on in the interview he reported some fairly recent history that would strongly suggest his having had a prior 1368/1370 et seq Psychological Evaluation out of Los Angeles County, and resulting in placement at Patton State Hospital.

Mr. Warren was quick to point out to me that he is mentally retarded and wholly illiterate. He added that the only thing that he can write, having been taught by one of his sisters, is his own name. At the same time Mr. Warren always seemed to be relaxed and comfortable with myself and the assessment procedures. He was affable and easy to approach, cooperative, focused, serious, and task oriented.

Mr. Warren's eye contact was good and his affect stable and appropriate though somewhat blunted. He was alert and oriented to person and place but not oriented to time. Ego strength appeared to be intact and reality testing was functional. During the time that I spent with Mr. Warren he did not exhibit any significant propensities toward either the cognitive or perceptual distortion of reality; although at times some of his thinking was mildly paranoid, and he reported to me a history of auditory hallucinations.

For the most part Mr. Warren's thinking was clear and lucid though his expressive and receptive language skills were poor. Other than that which was consistent with his mental retardation there were no oddities or peculiarities in communicational or relationship style or demeanor. And while there were definite signs of mild to moderate organic brain syndrome, some mild elements of logical deficit and poverty of content, no psychotic signs or symptoms were noted. There was no illusional or delusional thinking outside that which I already alluded to in terms of his being a bit paranoid at times. There was no circumstantial or tangential thinking, confused or disoriented thinking, or fragmented or disorganized thinking.

The Honorable Gerald Hermansen
Butte County Superior Court
In the matter of The People vs. Edgar Lee Warren, defendant
A CPC Section 1368/1370 et seq Psychological Evaluation
Page: -3-

 EXHibit

A brief neurological examination revealed a 51 year old consistently left side dominant male who was fully mobile and ambulatory while being observed moving about the small Interview Room and its adjacent Jail corridor. There were no signs of significant impairment in Mr. Warren's gross motoric control, coordination, balance, or dexterity; however his poor reproductions and the very immature overall quality of his Bender Visual-Motor Gestalt drawings were consistent with moderate brain damage. On the other hand Mr. Warren's freedom from distractibility was good; and there were no signs of hyperactivity, psychomotor agitation, or any inability on his part to be able to control motoric impulses. There were a number of indices pointing toward the significant impairments in visual and auditory perceptual/sensory processing abilities. Mr. Warren also indicated to me that he requires glasses, not for close up work, but to be able to see clearly that which is going on around him. He stated for example that most things within the Courtroom appeared to him to be blurred.

Mr. Warren also performed rather poorly across the Wechsler Memory Scale. During this test he indicated to me that he does not know his alphabet, his basic math skills are probably no better than those of a first or second grader; and civically, culturally, and socially, he has no knowledge about the world outside his immediate reach. He exhibited significant problems in the areas of Mental Control, Logical Memory, Associative Learning, and Short Term Auditory Memory. These results, once again, were quite consistent with his described history of being developmentally delayed, and a client of various developmental disabilities services.

Results obtained from this administration of an abbreviated form of the Verbal part of the Wechsler Adult Intelligence Scale – Revised to Mr. Warren were no better. These scores placed him in the mildly mentally retarded range of Verbal Intelligence. Mr. Warren was, not surprisingly, not at all comfortable with his own mental faculties. His basic anticipatory, planning, input integration, and organizational skills proved to be quite immature.

Overall intellectual test results and mental status definitely pointed in the direction of significant right and left hemisphere brain damage, neurological dysfunction, or learning disabilities; that in Mr. Warren's case were described as being chronic, and possibly related to substance abuse on his mother's part, possible failure to thrive, and maybe even repeated beatings to the head at the hands of his mother when Mr. Warren was very young.

The Honorable Gerald Hermansen
Butte County Superior Court
In the matter of The People vs. Edgar Lee Warren, defendant
A CPC Section 1368/1370 et seq Psychological Evaluation
Page: -4-



Mr. Warren's word knowledge and vocabulary skills present as being early to no better
than mid elementary school level.    The same could essentially be said about his general
reasoning and logical thinking abilities, his capacity to manipulate abstractions, ability to
make good judgment and common sense decisions, and conceptual thinking.  I did not
find him at all comfortable having to deal with any kind of novel or complex cognitive
matter; his analytical and critical thinking abilities being very child like.

With enough questioning Mr. Warren was finally able to provide the following history
about himself. He did not remember his birthday or his exact age, but stated that he was
born in Oroville, his mother left the relationship with his father while she was pregnant
with Mr. Warren, and that he already had an older sister from the relationship between
his biological parents.  He further stated that he was told that his maternal grandmother
was Native American and raised on one of the Tribal Reservations in this area.

According to Mr. Warren there was never a father figure in the home, and that he did
have two sisters and three brothers.  He spent the first nine years of his life living in
Chico, and then his mother took the family to the downtown Los Angeles Area.  Mr.
Warren described his mother as being a very physically punitive and abusive individual
when it came to his upbringing.  She seemed never to like him or to want to have much to
do with him.  She was never as abusive to Mr. Warren's other siblings.  By the time that
Mr. Warren was 10 or 11 years of age he was apparently getting into enough trouble, and
he had already been diagnosed as being mentally retarded, to result in the first of his
many foster home placements.  By the time he was 15 years of age and until he was in his
late teens he was placed at Three Pines a home for the developmentally disabled in the
Lancaster-Palmdale Area of LA County.

By way of Mr. Warren's descriptions he was, over the years, a client of Inland Counties
Developmental Disability Services, the Regional Agency that handles at least the coastal
county of Los Angeles; and Far Northern Regional Center which currently handles his
case. He stated that he attended special education classrooms from the time that he could
remember, he used to have a "yellow bus" pick him up at the house and take him to
school; and he dropped out of school in or after the 6th grade because he was continually
being laughed at.  At that point, according to Mr. Warren, the School District had
attempted to main stream him.

Mr. Warren told me that he has always been on SSI, and always had a payee.  He has
never once been in or attempted to be involved in the work force.  There have been a

The Honorable Gerald Hermansen
Butte County Superior Court
In the matter of The People vs. Edgar Lee Warren, defendant
A CPC Section 1368/1370 et seq Psychological Evaluation
Page: -5-



number of women involved in his life, one short term marriage; and that woman as well as another one, both described by Mr. Warren as being prostitutes, gave birth to Mr. Warren's two daughters. Mr. Warren was residing with one of these daughters, and his grandson, down in Bakersfield before eventually returning to Butte County.

Mr. Warren apparently also has a fairly significant criminal history. He has been in and out of different County Jails, and he has been to prison at least once. He also has a significant history of interventions with mental health professionals. These occurred in Los Angeles County, while incarcerated with CDRC, and through the POC, Parole Outpatient Clinic System, once Mr. Warren had been discharged to parole. As I mentioned before, eventually he ended up at Patton State Hospital and probably as the result of a PC1368/1370 Evaluation. Mr. Warren informed me that he has generally been placed on antipsychotic drugs; and he named Thorazine, Haldol, and Seroquel.

When it came to talking about some of the specifics pertaining to the pending proceedings and operation of the Courtroom and trial processes Mr. Warren exhibited almost unusual amounts of ignorance. This is especially in lieu of the fact that, in all probability, he spent some time down at Patton State Hospital learning about these things. In fact when I confronted him about some of his experiences there he replied that the doctors spent a lot of time trying to teach him things that he could never remember. Thus when asked about the roles of his Attorney, the Jury, the Prosecution, and the Judge, all Mr. Warren repeatedly told me was, "I don't know...I don't remember." He responded likewise when asked about felonies and misdemeanors, the differences between the two, and plea bargains. When asked how he might assist his Attorney he indicated to me that he really had no idea; but at the same time Mr. Warren informed me that he did not do anything wrong, he was not involved in the theft of any metal objects, he was only out "scrapping" with his cousin, that it was her truck and that she was driving, and he innocently assumed that everything they were doing was legitimate.

Mr. Warren was further able to tell me that he has "three charges" pending against him; "burglary...robbery...petty theft..." At one point in the interview process Mr. Warren insisted that he had no idea why he was in Jail; while at a completely other point in the interview he stated that he is being charged with helping his cousin to steal "three pieces of rusty steel lying on the side of the road by a garbage can." A little bit later he went on to state, "I was charged for stuff in her truck...I didn't know nothing about it." Then he added that, "first I was charged with petty theft, with a misdemeanor, then it was with a felony."

The Honorable Gerald Hermansen
Butte County Superior Court
In the matter of The People vs. Edgar Lee Warren, defendant
A CPC Section 1368/1370 et seq Psychological Evaluation
Page: -6-



Mr. Warren had no difficulty talking to me about his concerns about possible sentencing options, realizing what a serious situation he was in, and stating that if "I might go back to prison again...I can plead guilty to seven years or I would get 25 to life...the last time I was in prison they treated me real mean...I was raped..."

There were enough statements made by Mr. Warren during the length of my interview with him that would indicate all criteria necessary for the first prong of the PC 1368/1370 Competency Test have been met.   Mr. Warren possesses a basic knowledge about the pending charges, he recognizes how serious his situation is and what some of the potential sentencing options are; and simply by way of the number of times that he has been to Court he possesses at least a rudimentary knowledge about how the pending proceedings are going to work.

There are no questions in this examiner's mind but that Mr. Warren is mildly mentally retarded, and may very well have at least some mild history of experiencing various psychotic symptom sequalae, primarily by way of auditory hallucinations. In the past he has been treated more or less successfully through the application of neuroleptic agents such as Thorazine, Haldol, and more recently Seroquel. The fact that he also may have a significant and chronic polysubstance abuse problem, as stated to me by different jail staff, have not all helped Mr. Warren's different problematic conditions.   In fact substance abuse may have contributed to or exacerbated symptoms such as auditory hallucinations.

I spent one hour and forty five minutes with Mr. Warren. During that time he was very adequately focused, cooperative, and attentive.   His affect was always stable and appropriate, coordination of impulses was good, and reality testing was functional. He seemed to be trying his best to work with me in a diligent, pragmatic, and productive fashion; and in so doing Mr. Warren exhibited the kinds and quality of functional encoding and decoding skills that basically allowed for adequately effective communication to occur between the two of us.

Although Mr. Warren stated that he did not know what his Attorney is supposed to do, he otherwise did indicate, throughout the interview process, that he was aware that his attorney is his advocate, and someone working in his behalf. He also made a couple of comments that tended to suggest that he is aware that the Judge is a very important person in the trial process, with say over what ultimately might happen to Mr. Warren. Mr. Warren definitely exhibited adequate levels of self-protection and concern about what is going to happen to him; and within the context of the realization that he might be

The Honorable Gerald Hermansen
Butte County Superior Court
In the matter of The People vs. Edgar Lee Warren, defendant
A CPC Section 1368/1370 et seq Psychological Evaluation
Page: -7-

$EXHibit$

sent back to prison because of what he and his cousin were doing together on July 23rd of last year. Toward the end of my meeting with Mr. Warren he even made the statement to me, "My cousin bailed out of jail…bailed out on me…"

In this examiner's opinion criteria for the second prong of the CPC 1368/1370 et seq Competency Test have also been met. Mr. Warren possesses the basic psychological and mental resources that will allow him to work with his attorney in a rational manner during the conduct of his defense.

Therefore it is this examiner's opinion that Mr. Warren is competent to stand trial at this time. If the court has any further questions or need of input please feel free to contact my office.

Sincerely,

KENT R. CARUSO, Ph.D.
Clinical-Forensic Psychologist
License No.: PSY 4477

KRC/cep

Case 3:08-cv-02362-MHP   Document 2   Filed 06/09/2008   Page 21 of 31

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS, MOTION TO STRIKE AND MOTION
TO COMPEL FURTHER STATEMENT OF CLAIM

*Page 14*

### ARGUMENT

### I

### PLAINTIFFS' COMPLAINT IS NOT
### IN VIOLATION OF FEDERAL AND
### LOCAL RULES

Plaintiffs would argue that the Complaint on file herein, while lengthy, is a clear and precise articulation of plaintiffs case and meets the objective of Rule 8(a) of the <u>Federal Rules of Civil Procedure</u> in providing the defendants with precise notice of plaintiffs' legally cognizable grievances.

It is made clear throughout the Complaint that the grievances specified occurred at the time of the filing of the Complaint; all statements are made in the present tense. It is also specified that the grievances were occurring at the <u>Butte</u> County Jail, Central Facility. Rule 9(f) of the <u>Federal Rules of Civil Procedure</u> is not violated by such a pleading format. <u>Supreme Wine Co.</u> v. <u>Distributors of New England, Inc.</u> 198 F.Supp. 318 (D.C. Mass 1961). See also: <u>Jones</u> v. <u>United Gas Improvement Corp.</u>, 383 F.Supp. 420 (D.C. Pa. 1974).

The length of plaintiffs' Complaint is the result, not of any attempt on their part to obfuscate the issues, but of the number of parties necessarily named and the enormity and complexity of the issues raised by their conditions of confinement.

In every case cited by the defendants in their motion, complaints were dismissed, not because of their length, but because they were verbose, redundant, confused, and replete with irrelevant material. In <u>Gordon</u> v. <u>Green</u>, 602 F.2d 743 (C.A. 5, 1979), cited by the defense, the court was contemplating pleadings totaling more that 4000 pages and requiring a truck to convey.

In every case cited by the defendants in their argument that this Complaint is overly long, the court wisely balanced that length and complexity of the complaint against the issues actually before the court for decision. A lengthy complaint not justified by the simplicity of the matter should be dismissed. <u>Condol</u> v. <u>Baltimore & O.R. Co.</u>, 199 F.2d 400, 402 (D.C. 1952). Plaintiffs would argue, and with justification, that the issues presented are simply and succinctly state in the Complaint on file herein, and that their attempt to precisely state the issues before the court has been successful, thereby fulfilling the objectives of Rules 8 and 9 of the <u>Federal Rules of Civil Procedure</u>.

The defendants raise the specter of a possible statute of limitations problem. Obviously, plaintiffs' Complaint refers to events occurring contemporaneously with the filing of the Complaint. Even so, the issue of a possible violation of the statute of limitations cannot be brought by the defense in a motion to dismiss unless the complaint, through specific requirements that the cause of action arose in the distant past, presents the question to the court. <u>Contract Buyers League</u> v. <u>F. & F. Ins.</u>, 300 F.Supp. 210 (D.C. Ill. 1969), aff'd 420 F.2d 1191, cert. den., 91 S.Ct. 40, 41, 42, 400 U.S. 821, 27 L.Ed. 2d 49

II

## PLAINTIFFS' ALLEGATIONS ARE
## SUFFICIENTLY SPECIFIC, AND
## PLAINTIFFS DO NOT LACK STANDING

The defendants argue, in their Motion to Dismiss, that plaintiffs' allegations lack specificity to a fatal degree, and cite in support of this contention O'Shea v. Littleton (not "Litton" as in defendants' motion), 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed. 2d 674 (1974), a case the defense asserts is "directly on point."

Plaintiffs would counter that the difference between the O'Shea case and this case are more significant than any superficial similarities. In O'Shea plaintiffs brought suit alleging the county government and judiciary had engaged in a pattern and practice of racial discrimination in the treatment of criminal defendants. Plaintiffs did not allege they were individually or collectively the victims of the discriminatory pattern they described, nor did they allege the existence of pending criminal matters wherein they might, individually or collectively, suffer any future harm. It appears that, in the O'Shea matter, plaintiffs constituted an organization battling for the civil rights of unnamed, non-party persons, although this is not made clear in the court's opinion. The court held plaintiffs failed to satisfy the case or controversy requirement of Article III of the U.S. Constitution, and lacked standing to sue.

Quite distinct is the case before the court. All of the named plaintiffs have alleged they are currently incarcerated in the _Butte_ County Jail, Central Facility, and suffer from the pattern of unlawful conduct perpetrated upon them by the defendants.

In another case cited by the defendants, National Indian Youth Council v. Mortan, 363 F.Supp. 475 (1973), the plaintiffs lacked standing to sue, according to the sound reasoning of the court, because they simply were not the persons aggrieved by a school policy which expelled certain (non-plaintiff) Indian students. The defendants misstate the holding of the court in National Indian Youth Council v. Mortan, which simply has no bearing on the case now pending before this court.

III

## PLAINTIFFS' ALLEGATIONS AGAINST
## INDIVIDUAL DEFENDANTS ARE
## SUFFICIENTLY SPECIFIC

Plaintiffs have framed their allegations against the defendants in general terms for reasons which make such a format unavoidable: plaintiffs have described their grievances in terms of a pattern of unlawful conduct, engaged in by all of the named defendants, and plaintiffs are unaware of the formal and informal hierarchy within the jail administration, and therefore do not know who is directly responsible for the pattern of conduct of which they complain. Whenever possible, see for example paragraph 34 of the Complaint, plaintiffs have specified the defendants who are responsible for the pattern of unlawful conduct of which they complain.

To demonstrate their mastery of the obvious, plaintiffs would note they have not requested money damages as a form of relief; they have requested an exercise of this court's injunctive powers. If plaintiffs had not named as defendants those persons able to exercise control over the conduct of those who carry out the policies of which plaintiffs complain, this suit would be doomed by its own limited scope.

The named defendants in this suit fall into three categories: jail employees (guards and medical personnel), supervisors (jail administration and members of the _Butte_ County Jail - Board of Supervisors), and the California Board of Corrections. The acts complained of by DOCTOR AND MEDICAL STAFF

Defendants argue that plaintiffs have not met the technical pleading requirements of Local Rule 124.

Specifically, defendants contend plaintiffs have failed to specify the number of members in each class, thereby fatally failing to comply with Local Rule 124 and _Federal Rule of Civil Procedure_ 23.

Plaintiff classes are two:  members of the _Butte_ County Jail, Central Facility, population who are unsentenced and held bail, and members of that population who either have been sentenced and/or are held on parole holds and/or violations.  Plaintiffs do not know the number of members of each class, although they know that both classes consist of more than one hundred adult males.

The numerous requirement of Rule 23 is usually satisfied by showing a colorable claim by a named plaintiff who is a member of a larger class having similar claims.  _Weathers_ v. _Peters Realty Corp._, 499 F. 2d 1197 (C.A. 6 Ohio, 1974).  And, where the members of a class cannot presently be ascertained by reasonable diligence, nor their members accurately estimated, the purposes of Rule 23 are best served by holding that the first criterion of Rule 23(a) is satisfied.  _Eskra_ v. _Morton_, 380 F. Supp. 205 (D.C. Wis., 1974), rev'd on other grounds, 524 F. 2d 9 (C.A. 7 Wis. 1974).

Generally speaking, the numerous requirement and other prerequisites to a class action certification contained in Rule 23(a), _Federal Rules of Civil Procedure_, should be liberally applied where emphasis is upon injunctive relief benefitting both present and future class members rather than upon money damages.  _Horn_ v. _Associated Wholesale Grocers, Inc._, (C.A. Kan., 1977) 555 F. 2d 1090 (C.A. 5 Miss. 1975).

Finally, while plaintiffs bear the burden of showing the class is too numerous for joinder, plaintiffs need not show the exact number of class members.  _Barlow_ v. _Marion County Hospital District_, 88 F.R.D. 619 (M.D. Fla. 1980).  In fact, in a suit such as the one before the court, where plaintiffs seek to join both present and future members of the classes, quantifying is impossible, as is joinder.  When a class action on behalf of jail inmates was brought to provide judicial relief for present and future inmates, joinder of all members was held impractical, thereby allowing for class certification.  _Mawson_ v. _Wideman_, 84 F.R.D. 116 (M.D. Pa. 1979).

VI

## PLAINTIFFS' INTERESTS ARE PREDOMINANTLY SHARED AND COMMON, RATHER THAN DISTINCT AN ADVERSE

Pursuant to Rule 23 of the _Federal Rules of Civil Procedure_, the court must find, at the time of hearing on plaintiffs' Motion for Certification, that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members. Defendants assert, in a premature and inappropriate attempt to challenge the class action portion of plaintiffs' Complaint, that the interests of the plaintiffs are, as a matter of law, too individual and unique to warrant class certification.

Defendants first assert that the issue of medical care is individual, and cannot be decided on a class basis. Plaintiffs would counter that their allegations apply to the plaintiffs classes as a whole, and describe specific behavior patterns which result in inadequate medical care for the entire jail population.  These specific allegations include:  inadequate recreations to maintain a healthy body; inadequate diet; failure to provide regular hygiene facilities; improper heating, cooling and ventilation; poor sanitation; exposure to contagious diseases; inadequate preventive

OVER

plaintiffs are perpetrated by jail employees, acting under the supervision and control of the jail administration. Those allegations reaching to the California Board of Corrections specify those defendants. (See Complaint, paragraphs 47 & 48.)

The defendants misstate the law regarding the liability and accountability of supervising personnel. Under 42 U.S.C. 1983, supervising personnel can be held liable, and therefore accountable, for the behavior of their subordinates on several different grounds, and no allegation or proof of a "direct causal connection between the supervisorial acts or policies and the alleged wrongdoing" is required. (Defendants' Motion to Dismiss, p. 8, lines 1-2.)

If a supervisor is present on the scene of an unlawful act by his or her subordinate, or directs in some manner the act in question, he or she is subject to liability. Madin v. Paulson, 627 F.2d 83 (7th Cir., 1980) Dellums v. Powell, 566 F.2d 216 (D.C. Cir. 1977).

Acquiescence in the known acts of subordinates is a sufficient basis for a finding of supervisorial liability. Alvarez v. Wilson, 431 F.Supp. 136, 146 (N.D. Ill. 1977); Downs v. Department of Public Welfare, 368 F.Supp. 454, 464 (E.D. Pa. 1973).

A failure to adequate train subordinate officers in necessary skills has been held by some courts to be a sufficient basis for a finding of liability. Dewell v. Lawson, 489 4.2d 877 (10th Cir. 1974); Owens v. Haas, 601 F.2d 1242 (2nd Cir. 1979).

A failure to adequately supervise the conduct of subordinates has also been a successful basis for a finding of supervisorial liability. Opriano v. Johnson, 632 F.2d 1096 (4th Cir. 1980); Davis v. Jahradnick, 600 F.2d 458, 459, n.1 (4th Cir. 1979). In fact, knowledge of a pattern or practice of unconstitutional violations or conditions, or the existence of facts which create the potential for violations, may subject a supervisor to liability for failure to correct the situation. Holland v. Conners, 491 F.2d 539 (5th Cir. 1974).

Liability against a supervisor may also be based upon a violation of a statutory duty by him or her which caused or made possible the violation of plaintiffs' constitutional rights. Whirl v. Kern, 407 F.2d 781, 795 (5th Cir. 1969); Johnson v. Duffy, 588 F.2d 740 (9th Cir. 1978).

For the above reasons, and given the above body of law, plaintiffs assert their allegations are more than sufficiently specific to alert the defendants as to the nature of their grievances.

IV

PLAINTIFFS' CLASS ACTION ALLEGATIONS
SHOULD BE TESTED AT THE TIME OF HEARING
ON PLAINTIFFS' MOTION FOR CERTIFICATION
OF THE CLASS

It is plaintiffs' burden to demonstrate to the court that the requirements of Rule 23 of the Federal Rules of Civil Procedure and Local Rule 124 have been satisfied, and that certification as a class action is appropriate. Peterson v. Oklahoma City Housing Authority, 545 F. 2d 1270 (C.A. 10 Okla. 1976). Plaintiffs should, and will, attempt to meet that burden by noticing a motion for certification, at which time the defendants should more appropriately make their objections to class certification.

V.

PLAINTIFFS' CLASS ACTION ALLEGATIONS
ARE SUFFICIENTLY SPECIFIC TO SERVE
THE OBJECTIVES OF RULE 23 AND LOCAL
RULE 124

OVER

and diagnostic care; seizures of prescribed medications; refusals to respond to requests for medical care; inadequate examinations prior to diagnosis and treatment; denial of access to specialists; and the unlawful practice of medicine by the nursing staff. These complaints are not isolated and unique to individuals, but instead constitute a pattern of disregard for the physical health of plaintiffs.

Defendants additionally argue that the question of whether to provide medical care and/or methadone maintenance to particular inmates is an individual issue which cannot be decided within the context of a class action. Plaintiffs have alleged a pattern of refusing to provide medical care and/or methadone to addicted, recently admitted, prisoners. (n Cudnick v. Krieger, 392 F. Supp. 305 (D.C. Ohio 1974), the court certified a class action in which plaintiffs brought a civil rights action challenging an admitted jail policy which denied methadone during pre-trial confinement when it was shown the policy was directed at all addicted persons admitted to the jail.

For the foregoing reasons, plaintiffs would assert there is no portion of their Complaint which cannot be considered by the court in a class action context.

## VII

## PLAINTIFFS HAVE STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED AS TO EACH OF THE FOLLOWING PARTICULAR CLAIMS

### A.    MAIL CENSORSHIP

Plaintiffs have alleged the defendants open, delay and read their mail from attorneys and others. (Complaint, p. 10); prohibit plaintiffs from receiving through the mail newspapers, magazines and religious texts (Complaint p. 10); and confiscate plaintiffs' personal belongings, including legal and personal mail and written material (Complaint p. 12). There is in the Complaint no general allegation that the defendants censor plaintiffs' mail; instead, plaintiffs' allegations bite directly into the issue of their relationships with their attorneys, and their exercise of free speech and religious liberty, all actionable under 42 U.S.C. 1983 because of the First and Sixth Amendments of the United States Constitution. Hague v. CIO, 307 U.S. 496 (1939); Glasson v. City of Louisville, 518 F. 2d 899 (6th Cir. 1975); Philadelphia Yearly Meeting v. Tate, 519 F. 2d 1335 (3rd Cir. 1975); Schnell v. City of Chicago, 407 F. 2d 1084 (7th Cir. 1969).

The seminal case on the handling of convicted prisoners' mail is Procunier v. Martinez, 416 U.S. 391 (1974). The Court held that prison authorities may screen mail, but may not conduct censorship unless 1) an important or substantial government interest unrelated to the suppression of expression is furthered, and 2) intrusions were no greater than necessary or essential. Id. 416 U.S. 413-414. Additionally, the Court held that due process requires that a decision to censor or withhold mail must be accompanied by rudimentary due process, including notice to the inmate affected, an opportunity for the author of the letter to protest and a hearing by a prison official other than the person who decided to initiate the action. Id. 416 U.S. at 417. See also McNamara v. Moody, 606 F. 2d 621 (5th Cir. 1979).

### B.    VISITORS ALLEGATIONS

Several courts have indicated that a prisoner's visitation is protected by the First Amendment. Feeley v. Sampson, 570 F. 2d 364, 472 (1st Cir. 1978); Laaman v. Helgmoe, 437 F. Supp. 269, 320 (C. N.H. 1977); Lynott v. Henderson, 610 F. 2d 340, 342-343 (5th Cir. 1980); and Hamilton v. Saxbe, 428 F. Supp. 1101, 1109-1112 (N.D. Ga. 1976) aff'd sub nom.

OVER

Page 19

Hamilton v. Bell, 551 F.2d 1056 (5th Cir. 1977).

Plaintiffs have presented an actionable claim to the court. It is for the court to decide, at time of trial, whether the restrictions placed upon visits in the _Butter_ County Jail are so severe as to be violative of plaintiffs' First Amendment rights.

C.    USE OF THE TELEPHONE

Defendants' argument on this point is incomprehensible and must be in error.

Numerous courts have held that pretrial detainees' freedom of expression encompasses reasonable access to telephones to call attorneys, witnesses and loved ones. Wolfish v. Levi, 573 F.2d 118 (2d Cir. 1978); rutherford v. Pitchess, 457 F.Supp. 104, 115 (c.d. Cal. 1978); Owens-El v. Robinson, 442 F. Supp. 1368, 1386-1387 (W.D. Pa. 1978); Jones v. Wittenberg, 440 F. Supp. 60, 90-98 (N.D. Ohio 1977); O'Bryan v. County of Saginaw, 437 F. Supp. 582, 599 (E.D. Mich 1977); Brenneman v. Madigan, 343 F. Supp. 141 (1974); Inmates of Suffolk County Jail v. Eisenstadt, 360 F. Supp. 691 (1975).

D.    ACCESS TO EXERCISE AND RECREATION

Many courts have held that the denial of adequate exercise and recreation to jail inmates is cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. In Spain v. Procunier, 600 F. 2d 189, at 199 (9th Cir. 1979), the court held that plaintiffs must be allowed one hour of outdoor exercise a day, five days a week; to do less was to be in violation of their rights under the Eighth Amendment.

Due process and equal protection of the law have been held to mandate that pretrial detainees attain some minimum measure of outdoor exercise each week. Court orders have ranged from requiring one hour of outdoor exercise daily to 2 & 1/2 hours of outdoor exercise per week, with the preponderance of authority requiring at least one hour a day five days a week. See, inter alia, Campbell v. McGruder, 416 F. Supp. 100 (D. D.C. 1975), aff'd in part, remanded in part, 580 F. 2d 521, 455-546 (D.C. Cir. 1978) (one hour daily); Miller v. Carson, 401 F. Supp. 835, 891-893, (M.D. Fla. 1975).

E.    ACCESS TO A READING LIBRARY

The First Amendment guarantees to prisoners the right to receive and possess reading matter. Jackson v. Godwin, 400 F. 2d 259 (5th Cir. 1968); Brown v. Peyton, 437 F. 2d 1228 (4th Cir. 1971); Rowland v. Jones, 452 F.2d 1005 (8th Cir. 1971); Fortune Society v. McGinnis, 319 F.Supp. 901 (S.D. N.Y. 1970).

In Bell v. Wolfish, 441 U.S. 520 (1979), the United States Supreme Court upheld the use of a "publisher only" rule regarding pre-trial detainees' access to reading material, but under limited circumstances not present herein. First, the Court expressly limited its holding to that rule's application to hardback publications. Id. at 549-550. Second, the Court noted the significance of a "relatively large" library within the institution (Id. at 552.), thereby implying a different conclusion might be reached in prisons or jails without adequate reading libraries. And third, the Court apparently applied a least restrictive alternative test to the rule. Id. at 552.

F.    CONFISCATION OF PERSONAL ITEMS

Plaintiffs have alleged both a violation of state law and a violation of constitutional dimension in asserting their belongings, including legal papers and attorney-client mail, have been confiscated from them without justification.

G.    BATHS AND SHOWERS

Plaintiffs have specifically alleged they are not allowed to bathe on a regular basis, are denied showers as a form of discipline, and are not allow to bathe prior to court appearances. These issues are of constitutional dimension under the Fifth, Eighth and Fourteenth

Amendments of the United States Constitution.

**H.    DIET**

Several cases have held that an inadequate diet is a form of cruel and unusual punishment, violative of the Eighth Amendment of the United States Constitution. Cunningham v. Jones, 567 F. 2d 653 (6th Cir. 1977); Shapley v. Wolff, 568 F. 2d 1310 (9th Cir. 1978); Landman v. Royster, 333 F. Supp. 621, 647 (E.D. Va. 1971).

**I.    OVERCROWDING**

Courts have uniformly approached the issue of overcrowding in terms of the requirements of the Eighth Amendment of the United States Constitution. In the following cases the courts appear to have taken a per se approach to overcrowding: Williams v. Edwards, 547 F. 2d 1206 (5th Cir. 1977) (court hints that 50 square feet per prisoner is required); Inmates of D.C. Jail v. Jackson, 416 F. Supp. 119, 124-125 (D. D.C. 1976) (48 square feet of cell space per prisoner required). The following cases have used the "totality of circumstances" approach: Newman v. Alabama, 559 F.2d 288, aff'd, 406 F. Supp. 318, 334 (M.D. A.a. 1976) (60 square feet of living space per prisoner); Battle v. Anderson, 564 F. 2d 388 (10th Cir. 1977) (60 square feet of cell space).

**J.    HEATING, COOLING AND VENTILATION**

Plaintiffs have specifically alleged that the improper heating, cooling and ventilation in the *Butte* County Jail, Central Facility, constitute a health threat. (Complaint, p. 13, para. 31) Jail conditions having a significantly adverse impact on mental and physical health of prisoners have been enjoined as unconstitutional. Battle v. Anderson, supra, 564 F. 2d at 393, 403; Campbell v. McGruder, supra, 580 F.2d at 531; Jefferson v. Southworth, 447 F. Supp. 179, 180 (D. R.I. 1978).

**K.    MEDICAL CARE**

As enunciated by the United States Supreme Court, "deliberate indifference to serious medical needs constitutes the 'unnecessary and wanton infliction of pain.'" proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 50 L. Ed. 251, 97 S. Ct. 285 (1976). In the context of broad class action challenges to health care in correctional facilities, as opposed to individual challenges to one instance of inadequate health care, several courts have found that poorly designed, negligent medical procedures may amount to "deliberate indifference" to prisoners' medical needs in violation of the Eighth Amendment. Todaro v. Ward, 565 F. 2d 48, 52 (2nd Cir. 1977); Inmates of Allegheny County Jail v. Pierce, 612 F. 2d 754 (3rd Cir. 1979).

**L.    DUE PROCESS IN DISCIPLINARY PROCEDURES**

The leading case on discipline of prisoners is Wolff v. McDonell, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974), which established that, when faced with withdrawal of earned time credits, prisoners are entitled to (a) an opportunity to appear before the decision making body, (b) written notice of the charge at least 24 hours in advance of the hearing, (c) an opportunity to present witnesses and documentary evidence when doing so will not be unduly hazardous to institutional safety, (d) an impartial hearing body, and (e) a written statement of the evidence relied on and the reasons for the disciplinary action taken. Id. 418 U.S. 563-73. See also Baxter v. Palmigiano, 425 U.S. 308, 47 L. Ed. 810, 96 S. Ct. 1551 (1976).

In California the basic elements of due process in the discipline of jail inmates is codified in Title 15, California Administrative Code, §1081.

**M.    BRUTALITY**

Plaintiffs have alleged the frequent and arbitrary infliction of physical brutality by guards

over

in the jail. Physical brutality is, of course, cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

N.    RIGHT TO VOTE

It may be true other prisoners have not filed suit requesting the court enjoin jail administrators from denying them their right to vote, but these prisoners now have, and once done, the constitutional dimension of the requested relief cannot be denied.

O.    EXERCISE OF RELIGIOUS FREEDOMS

Plaintiffs have alleged they are now allowed to practice their religions within the _Butte_ County Jail. There is only one service per week, and only a few prisoners, arbitrarily chosen, are allowed to attend. Other prisoners cannot even receive religious texts, such as The Bible, in the mail.

The United States Supreme Court has consistently recognized that freedom of religion continues to exist inside prison walls. Cooper v. Pate, 378 U.S. 546 (1964); Cruz v. Beto, 405 U.S. 319 (1972).

Once a prisoner demonstrates abridgement of his freedom of religion, it is incumbent upon prison authorities to come forward with a showing that the abridgement serves an important or substantial governmental interest and that they (the prison authorities) are without less restrictive means of achieving that end. Kahane v. Carlson, 527 F. 2d 491 (2nd Cir.1975); Teterud v. Burns, 522 F. 2d 357, 359 (8th Cir. 1975). Cf. Kennedy v. Meacham, 540 F. 2d 1057, 1061 (10th Cir. 1976), which indicates the government must show a compelling state interest.

Religious freedom can be abridged by a denial of religious services. Mawhinney v. Henderson, 542 F. 2d 1 (2nd Cir. 1976). And religious freedom can be abridged through a denial of access to religious reading material. Mukmuk v. Commissioner of Department of Correctional Services, 529 F. 2d 272, 275 (2nd Cir. 1976).

P.    SHAKEDOWN SEARCHES

In the last several years the courts have moved away from the notion that prisoners are completely without any protections from unreasonable searches and seizures. Rather, the courts have been recognizing that although the exigencies of incarceration reduce the scope and extent of prisoners expectations of privacy, prisoners retain a residuum of Fourth Amendment protections. United States v. Savage, 482 F. 2d 1371 (9th Cir. 1973), cert. denied 415 U.S. 932 (1974); Bonner v. Coughlin, 517 F. 2d 1311, 1316, 1317 (7th Cir. 1975); United States v. Lilly, 576 F. 2d 1240-1244 (5th Cir. 1978) reh. denied 599 F. 2d 619 (5th Cir. 1979).

As with all searches, the perpetrators of custodial searches, namely jail officials, carry the burden of showing that such searches are reasonable. United States v. Lilly, supra, 576 F. 2d at 1245; United States v. Savage, supra, at 1373; Hurley v. Ward, 448 F. Supp. 1227, 1230 (S.D. N.Y. 1978).

Q.    CLASSIFICATION OF PRISONERS

Plaintiffs have alleged a violation of state law in their allegation regarding classification of inmates. Plaintiffs have additionally alleged that classification is at times racially motivated in violation of the Fourteenth Amendment.

R.    EDUCATIONAL, VOCATIONAL, REHABILITATION AND WORK FURLOUGH Programs

These issues are state law questions, calling for the court's exercise of pendent jurisdiction. Given the overwhelmingly federal character of this suit, pendent jurisdiction to decide these state law issues appears more than appropriate.

ABSTRACT TWO EXPARTE PAGE ONE ☐ TITLE DATE
TIME
HOUR
MINUTES

IN THY ─VS─ THE MATTERS OF WE THE
PEOPLE ─V.S.─ UNITED STATES NORTHERN COURT
FOR UNITED STATES SAN FRANCISCO DISTRICT
LOCAL CIVIL NDC ─VS─ EDC JURISDICTIONS
EXPARTE 1828195518
EX ─EXCELL─ EXPARTE ─CVF 19 STATS 28, 1958.
RESOLUTION EXPEDITED EXPARTE NUM CVF 19 1828 1958 1828

IN PRO PER
EDGAR LEE WARREN [PLAINTIFF]
EXPARTE EIN NO. ─ SOCIAL SECURITY
NDC EASTERN EDC EXPARTE 1828 1956 1828
CHIEF ─LORD─ HOUSE ─ OF BALTIC
IT IS SO ORDERED GRANTED [UNDER SEALS]
SS, } UNDER SEAL ─SEALS ─SEALED BY SIGNATU─
{ FOR EXPARTE ─SIGNATURE ─JUDGEMENT
{ CREDITOR ─CHURCH─ DAVID ─ISSAC─DI─TOR
VITICAN POPE ─ SIGNATURE ─ DATE ─SEALED

V.S.

PEO 95818 PEOPLE 95896 ─USC─ NDC ─WISS─
RWW RHODE ISLAND HENDERSON NORTHERN USC
UNITED STATES NORTHERN USC FEDERAL DISTRICT
JUDGE ─VS─ MAG ─VS─ CHIEF MAGNISTRATE
[UNITED STATES NAMED PART B DEFENDANTS AL
JUSTICE RONALD A. GEORGE ─VS [WISCONSIN]

2007-2008 JUDICIAL EIN NOTICES
[2007] CITATION NUMBER ─ CITY ─ ZIP CODE
SUPERIOR CASE NO. ─ JUDGE
CASE
CV─
CR─
CRIM─
(NDC) EXPARTE REPORT
ORGANS ─
ACCUSATORYS ─ RE ─ ORDER
CLAIM ─ RE ─ EXPARTE
AFFIDAVIT ─ NOTICES ─ ORDER
EXPARTE ─ (NDC) ─ RE ─
MOTION ─ ORDER ─ VS BENICIA
PLEADING ─ REORDERED (NDC)
PLAINTIFF ─ PETITION
EXPARTE SUMMARY ─ PRAYER
REPATORY ─ RE ─ ORDERS
IT IS SO ORDERED GRANTED BY ─ ORDERS
CHIEF ─ ELDEST ─ LORD ─ ORDERS

PROOF OF SERVICE
BY VIA USC ─USPS─ MAILING (S)
UNDER PENALTY OF PERJURY SO
DIRECTING ALL COURTS JUSTICES
NDC ─VS─ BENICIA JUDGE SUPRA
─VS─ NDC ─ CHIEF ─MAGNISTRATE
NORTHERN USC DISTRICT CIVIL COURT
HENDERSON ─VS [EDC FRESNO [UNITED STATES]
IT IS SO EXPARTE ORDERED GRANTED BY
CHIEF ─EXPARTE ─VS ─EDC [WISCONSIN]
DATE
TIME
COURT
DEPARTMENT
EXPARTE
RE─REPORT─ORDER
PLACE
ROOM
SEALED ─VENUE ─ORDER
APPLT COMM. ─VS─ JUDGES
CHIEF MAG ─VS─ JUST...

CVF 19, 28 STAT 99 1988 ≥ 1989 (1469. 1541. 1992)
PROOF OF VIA USC USPS SERVICE
SO DIRECTING COURT NDC CLERKS
APPOINATMENT NDC COURT COUNSELS

PLEASE MAKE CIVIL COURT ☐ LAW SUEING(S)
INTENSTIONS TO PROCEEDINGS SET AT ISSUE
IN 10 TRIAL BUSSINESS COURT TRIAL LIEN LAW
DAYS, PEOPLE ─VS─ BRYANT SEALS SMITH (NDC)
IN COURT ─ DEPT. ─ JUDGE ─ CLERK
ASSESOR ─ RECIEVER ─ ADMINISTRATOR
SUPRA ─APPLT ─JUDGE ─VS ─MAG. ─NDC
ON DAY ─ MONTH OF ─ IN THE YEAR
OR SHORT TITLE ─ NAME ─VS ─COURT
IT IS SO ORDERED GRANTED PAGE ONE ─
BY CHIEF ─ MAG. DATE

ABSTRACT OF THE PETITIONAL EXPOSURE DATE — TIME [

A] PLAINTIFF TITLES — CVF. 19. STATS 28 USC 1992 [ 239. 688. 758. 898 19 JUDGEMENT CREDITOR ENTRI
INTIONALED — (2007-2008 RE

1   INDENTIFFICATION                          ASSESSOR — SIGNATURE
2   PMB VS PBM No.                            RECORDER — NDC SIGNATUR
    IDENT. — CNR                              ADMINISTRATOR — NDC SIGNATUR
3   CRN — INMATE No.                          CLERK — COURT NAME
                                              SIGNATUR — VS — COURT
4                                             MAGNISTRATE — NDC SIGNATUR

5                 UNITED STATES NORTHERN
6   [2007] DISTRICT COURT FOR U.S.C. SAN FRANCISCO DIST.
7   [2007] EXPARTE 1918182812119 A VS B NDC EDC SOC [UNITED STATES] ALS
8   [2007-2008] SHORT EXPARTE TITLE[] — VS — [UNDER SEALS SEALED]
9       INTIONALED NAME              V.S.
10      IN PROPER      [2007-2008] CHP□ □POLICE CITATION]  [NORTHERN USC UNITED STATES]
11                     □ USC COUNTY SHERIFF CITATION No.
                       EXPARTE DATE — Time — CITY
12  B] Edgar Lee Warren [UNDER SEAL]          zip code
        V.S. PLAINTIFF()
13                                [2007-2011] EXPARTE ORDER
14  B] Butte county Jail ET VS AL()   FOR ADMISSIONS ENTRIES TO
        V.S. DEFENDANT()              NORTHERN [NDC] DISTRICTS
15                                    CIVIL LAW SUEINGS (NDC) CIVIL
16  C] Doctor and Medical staff AL()  EXPARTE ORDER GRANTING
        Rem Re  Appellee'()           CIVIL□ □CRIMINAL COURTS
17                                    LEGAL APPOINMENT TO COURTS
18  D] Quaisi Rem Re Appellees AL(S)  COUNSEL WITHIN 60 TRIAL
        IT IS SO ORDERED GRANTED By   COURT CALENDAR DAYS  CVF 19, 28 [1384
19  2007 HIGHER COURT LAND EXPARTE 2007
                                      FOR INMATE EDGAR LEE WARREN
20  SS;  EXPARTE APPOINTMENT TO       EXPARTE UNDER □ PRIVACIES
21       APPROXIMENTATIONS CIVIL Trins (NDC) Federal Civil Court Seal(S)
         APPOINTMENT TO COUNSEL       IT IS SO ORDERED GRANTED
22      [SET AT CIVIL NDC ISSUE]      By EXPARTE CHIEF SIGNATUR
23  PLEASE MAKE □CIVIL NDC COURT NOTICES ON DATE — RE
24  IN Thy — VS — The city of ____     TIME
25  TRIAL COURT OF ____       IN The  HOUR
26  THE Said DAY of ____ FLOOR — IN   MINUTES
27  IN The YEAR ____                  COURT — VS — [
28  COURTROOM ____ (ad) OF □CRIMINAL(NDC) DEPARTMENT
    department — Judge — VS — HENDERSON  APPEAL dept.
    SAN FRANCISCO Floor — COURT — NDC DIST.  EXPARTE PLACE
    CALIFORNIA zip code (1825-___)  Room — VS — BURGER  [under
    IT IS SO ORDERED GRANTED By CHIEF VS. Judge   SEALED COURT NAME()  SEALS
    □ MAGNISTRATE Assigned — CHIEF MAG.  VS — MAG — vs
    MODIFICATION □ COURT SIGNATUR
    COURT DATE

(left margin, vertical) APPLICANT OR NDC APPOINTMENT TO LEGAL COUNSEL 2008
(left margin, vertical) COPIES SERVED TO PARTIES